In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00006-CV
IN THE INTEREST OF A.W.A.

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 21-03-03534-CV**

**MEMORANDUM OPINION**

Mother and Father appeal the trial court's order terminating their parental rights to their daughter, Anne, on findings of conduct endangerment, condition endangerment, their failure to comply with their respective family service plans, and as to Father, that termination of Father's parental rights is in the best interest of Anne.[1] On appeal, the parents argue the evidence is insufficient to support the trial

---

[1]*See* Tex. Fam. Code Ann. § 161.001(1)(D) ,(E), (O), (b)(2). To preserve the privacy of the parties, we refer to the Appellants as "Mother" and "Father" and the child by a pseudonym to protect their identities. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

1

court's predicate findings terminating their parental rights under section 161.001(b)(1). In addition, Father argues the evidence is insufficient to support the trial court's finding that terminating his rights would be in Anne's best interest under 161.001(b)(2) of the Texas Family Code. *See* Tex. Fam. Code. Ann. §161.001(b)(2). We affirm.

## I. Background

## A. Procedural History

### 1. Affidavit of Removal

Anne was born in October 2020. In March 2021, The Department of Family and Protective Services (the Department) filed an Original Petition for Protection of a Child, For Conservatorship, and For Termination in Suit Affecting the Parent-Child Relationship and Order Setting Hearing. Attached to the petition, the Department filed an Affidavit in Support of Removal alleging that keeping Anne in her current home was contrary to her welfare and best interest. In the affidavit, the Department outlined the events that led to its request for Anne's removal. Mother and Anne tested positive for marijuana at Anne's birth, and Anne was placed in the NICU for low sugar levels. Mother and Father admitted to smoking marijuana while Mother was pregnant with Anne. A Family Based Service Plan was opened for the parents, and Mother and Father continued to test positive for drugs in November and December 2020. Both Mother and Father completed a substance abuse assessment

2

and were recommended to submit to random drug testing, substance abuse counseling, and psychological counseling. Within two weeks of this assessment, the Department received notice that the parents had a "domestic altercation" leading to Father's arrest. Anne was removed from her parent's care and placed with a maternal aunt. The parents continued to test positive for marijuana in January 2021. That same month, the maternal aunt took Anne to a wellness appointment and it was discovered Anne had a fractured forearm. The parents offered various explanations for Anne's injures, telling the Department that she fell in her baby carrier when she was a month and half old and a dog jumped on her at about two months old. Anne was then placed with her maternal great-grandmother. In February 2021, a Family Team meeting was held with the parents and maternal great-grandmother where the parents agreed to engage in services with the Department, agreed to stop using illegal substances, maintain contact with the Department, obtain employment, and find stable housing. The Department reported inconsistent contact with the parents during the month of March, with both parents not showing up for requested drug testing. Father was arrested during that month for probation violations. The Department requested Anne's removal because of Father's domestic violence, criminal history, and drug usage.

## 2. Second Affidavit of Removal

In September 2021, maternal great-grandmother was named managing conservator of Anne after filing a Petition in Intervention in this suit. In November 2021, the Department filed a Petition to Modify, requesting to modify the September order to be named temporary managing conservator of Anne. In its Affidavit in Support of Removal, the Department alleged neglectful supervision of Anne by Mother and maternal great-grandmother. According to the second affidavit, it received a referral that Mother was smoking marijuana around Anne, that neither maternal great-grandmother or Mother had baby formula for Anne and did not have the ability to get formula, resulting in Anne drinking sugary drinks. Maternal great-grandmother also had a violent boyfriend and was allowing Mother to live with Anne. In August 2021, maternal great-grandmother was arrested for possession of methamphetamines. Anne was removed from maternal great-grandmother's care. The Department requested temporary conservatorship because of serious concerns about Anne's caregiver's drug usage, stability of her home placement, noting she has been moved 7 times, and the parent's criminal history and drug use.

In November 2021, the trial court granted the Department temporary sole managing conservatorship over Anne. Anne was placed in foster care. The trial court held a bench trial in November 2022.[2]

---

[2] Maternal great-grandmother did not file an intervention in this case.

**B. Evidence at Trial**

**1. Testimony of Caseworker Amber Evans**

Evans testified that she is the conservatorship caseworker for this case. She noted that there was a prior Department case with this family, in which maternal great-grandmother was named permanent managing conservator of Anne.

Evans stated that she was assigned this case in May 2022, and Mother contacted her and they agreed to meet in person. Subsequently, Mother did not contact her again until July, claiming she had phone issues. Evans finally met Mother in person in August. Evans stated that Mother has completed her domestic violence assessment, and three sessions of individual and outpatient therapies. Evans never received documentation that Mother ever completed her parenting course, that she is employed, or has stable housing. She also confirmed that since she has been the caseworker, Mother has not had visitation with Anne because Mother cannot pass a drug test. During the pendency of this case, Mother has continued to test positive for marijuana. Evans expressed concerns that Mother also continues to maintain contact with Father because they have a volatile relationship. At the time of trial, Mother was pregnant again with Father's child. She testified that since April, she has not seen any change or behavior from Mother.

Regarding Father, Evans stated she is concerned with his criminal history and failure to complete services. According to Evans, Father needs to complete Batterers

Intervention Prevention Program classes, including individual and group classes, and a psychiatric evaluation as recommended from his substance abuse assessment. She testified that Father regularly visited Anne and his visits were appropriate. Evans stated that her biggest concern for Father is his failure to complete his services, in conjunction with his criminal history, and the very young age of this child.

Evans testified that Anne is currently in a "foster to adopt" placement. She stated that Anne is bonded with her foster parents and foster sibling, and that the home is safe and appropriate. She believes that termination of Mother and Father's parental rights is in Anne's best interest.

**2. CASA advocate Christy Prozzoly**

Christy Prozzoly has been the CASA advocate for Anne since December 2021. She explained that her role is to advocate for Anne and help facilitate the needs of Anne. With Father, she stated she provided "[c]oaching, recommendations on creating resumes, anything that I could do." During that time, she has met with both parents and with Anne's paternal grandparents. She stated that during her meeting with paternal grandfather, he was "throwing the groceries[,]" leading Prozzoly to stay after her meeting to check on paternal grandmother, because she was "concerned for her" safety. She described her experience in meeting the paternal grandparents, stating it was "relevant[,] because this is the home that [Anne] would be going to if [Father] was successful" and if he were awarded conservatorship.

6

When asked about Mother, Prozzoly stated that she first met Mother in January 2022 at the Department office. She had one other visitation with Mother in February 2022. She observed the visits between Mother and Anne, and Mother brought food and toys to Anne during the visit. Prozzoly recalled that Mother had an "outburst" during that visitation. Prozzoly testified that Mother did not support Anne during the pendency of the case.

Prozzoly confirmed that Anne has moved thirteen times in her life and Prozzoly does not believe those moves were in Anne's best interest. Prozzoly believes Anne should stay with her foster family.

**3. Father**

Father testified that he was twenty-two years old and this was his first case with the Department. He admitted to smoking marijuana with Mother when Mother was pregnant with Anne. He testified that after Anne was removed from the maternal great-grandmother, she lived with Father and the paternal grandmother for about "two months" during the pendency of this case. Father testified regarding his criminal history including, evading arrest, assault family violence, and possession of a controlled substance. The complaints and judgments were entered as evidence by the Department. Father testified that he was arrested and convicted for the assault strangulation of Mother and received eight years deferred adjudication. Father

7

confirmed that he has a new family violence assault charge against Mother pending since April 2022. Father denied having an ongoing relationship with Mother.

Father stated since he has been released from jail he has made preparations for Anne to be returned to him, including living with paternal grandmother, having a "good…. clean environment[,]" for Anne to live, with her own room, and that he just got a job. Father asserted that although he does not have any items for Anne, he plans to get a car seat, bed, toys, clothes, and diapers for her to go in her room. Father would place Anne in daycare while he worked during the day. He testified that he is working to complete his drug and alcohol group therapy, parenting classes, and batterer's intervention program. He explained that he is learning to control his urges regarding drugs and alcohol, and he is learning to control his anger. According to Father, he learned how his substance abuse and behaviors negatively affect his child. Father admitted that he made "bad decisions[]" including smoking marijuana and "family violence issues." But he denied smoking marijuana in front of Anne before she was removed from his care, stating he would go in the backyard when he smoked marijuana. Father also stated that since he has been released from jail, he has visited with Anne for an hour "[e]very other week," but missed his last visitation because another person was not available to observe.

**4. Mother**

Mother testified she wants the court to grant her or Father managing conservatorship of their daughter. Mother confirmed that Anne received an injury before she was removed from her care but stated she did not know how her daughter received the injury to her arm. Mother testified she did not contact the Department until April after Father went to jail. She stated she did not go to the Department's office until that date because she did not have a "ride[.]" She explained that she has not had visitation with Anne in almost a year because she cannot pass a drug test. Mother also denied losing her temper and screaming at her lawyer in front of Anne on an occasion when she did have a visitation.

Mother testified that she started smoking marijuana every day starting when she was sixteen years old. Mother detailed her criminal history, explaining that she was first arrested for possession of marijuana when she was eighteen years old. In total, Mother testified she has been arrested three times with the most recent arrest in 2022. Mother stated that she is not currently using marijuana, but "[i]t's just still in my system, and my levels will tell that." Mother testified that she last used marijuana at the end of May, but at her November trial, admitted she could not pass a drug test, because she is still using a substance that is a "form of THC." Mother also confirmed that she is currently pregnant and failed drug tests during her current pregnancy. Mother denied any knowledge that maternal great-grandmother was

9

using methamphetamines when Anne was in her custody. Mother testified that she has not completed any part of her family service plan, but she says she is "in the works of completing them."

Mother stated she is currently living in her mother's home that includes several other family members. Mother is not currently employed, but plans to get a job to support Anne, in addition to receiving support from her family. Mother stated Anne would sleep in Mother's room in a queen size bed and that Mother made preparations for Anne, including obtaining clothes and toys. Mother planned to start potty training Anne. Mother stated that her sister lives in the home and would watch Anne during the day while Mother worked.

Mother testified that she and Father dated for two and half years. When asked about Father's domestic violence, she stated that he has been violent with her "more than ten" times, with the most recent assault happening in April. She described in detail Father's domestic assaults, stating he went to jail for domestic violence assault against her. Mother testified she never called the police on Father, but a neighbor or Father's family called the police. Mother agreed that Anne was in the home during an assault. Mother stated Father would "never put his hands on my daughter[,]" and Mother was comfortable with Father having overnight visitation with Anne. Mother expressed confidence that Father is taking medication to control his anger issues since he has been released from jail. Mother denied having an ongoing relationship

with Father, stating they only communicate about this case. That said, Mother also agreed that she is currently pregnant with Father's child.

**5. Foster Mother**

Foster Mother testified that she has had Anne in her home for almost a year. Her family would like to adopt Anne if Mother and Father's rights are terminated. Foster Mother stated that Anne is developing on target and has no health issues other than springtime allergies. She testified that she has been married for 12 years, owns her own home, her husband has never been violent with her, and neither she nor her husband have been arrested or incarcerated. Her household includes herself, her husband, and her six-year-old daughter. Both she and her husband work full time and Anne attends daycare during the day. She testified that Anne has her own room, with a toddler bed, dresser, changing table, and rocking chair that she still uses to rock Anne to sleep.

According to Foster Mother, Anne was very timid when she arrived at her home, and it took several weeks before she could put her on the ground or in a chair because she always wanted to be held, with Anne screaming each time she put her down. Foster Mother stated that she works with Anne, reading, helping her to identify animals and teaching her to "form words." Foster Mother described the difficulties surrounding the uncertainty of Anne's future, stating that Anne is an

"absolute pleasure to have and she gets along with everyone in our house." Foster Mother confirmed that she has not observed the parents' interactions with Anne.

At the conclusion of the trial, the trial court granted the Department's petition and terminated Mother's and Father's parental rights, finding predicate statutory requirements and that termination was in the best interest of Anne. Mother and Father timely appealed.

## II. Standard of Review

The decision to terminate parental rights must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b). Under the Family Code, "'[c]lear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.L.*, 163 S.W.3d at 84.

In reviewing the legal sufficiency of the evidence in a parental rights termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume the

12

factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id*. (quoting *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. In cases tried to the bench, the trial court in its role as factfinder determines the credibility and weight of the witnesses' testimony and resolves any inconsistencies or conflicts in the evidence. *See Webb v. Crawley*, 590 S.W.3d 570, 578 (Tex. App.—Beaumont 2019, no pet.); *In re R.J.*, 568 S.W.3d 734, 754 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

### III. Analysis

### A. Statutory Grounds D and E

Mother and Father challenge the sufficiency of the evidence to support termination of their parental rights under sections 161.001(b)(1), (D) and (E) of the Texas Family Code. *See* Tex. Fam. Code Ann. §161.001(b)(1) (D), (E).

13

Additionally, Father challenges the sufficiency of the evidence in support of termination under subsection 161.001(b)(1)(O) of the Texas Family Code. *Id*.

We are required to consider the sufficiency of the evidence pursuant to Sections 161.001(b)(1)(D) or (E) if challenged. *In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019). If the evidence is sufficient as to one of these, it will not be necessary to address the other predicate grounds because sufficient evidence as to only one ground in addition to the best interest finding is all that is necessary to affirm a termination judgment. *Id*. at 232-33. Because the evidence supporting statutory grounds D and E may be interrelated, we may consolidate our review of the evidence supporting these grounds. *See In re J.L.V.*, No. 09-19-00316-CV, 2020 WL 1161098, at *10 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.). Endangerment arises when a parent's conduct jeopardizes the child's emotional or physical health. *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Under subsection D, parental rights may be terminated if clear and convincing evidence supports a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Subsection E allows for termination of parental rights if clear and convincing evidence supports that the parent "engaged in conduct or knowingly placed the child

with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E).

Under subsection D, parental rights may be terminated based on a single act or omission by the parent. *In re L.E.S.*, 471 S.W.3d 915, 925 (Tex. App.—Texarkana 2015, no pet.) (citing *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied)). Termination under subsection E requires more than a single act or omission and a "'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* at 923 (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)). As for subsection D, we examine the time before the child's removal to determine whether the environment of the home posed a danger to the child's physical or emotional well-being. *Id.* at 925 (citing *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.)). "A finding of endangerment under subsection E, however, may be based on conduct both before and after removal." *In re A.L.H.*, 515 S.W.3d 60, 93 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *In re S.R.*, 452 S.W.3d at 360). "'[E]ndanger' means to expose to loss or injury[.]'" *In re N.S.G.,* 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Under subsection E, it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. *Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 367. "'A child is endangered

15

when the environment creates a potential for danger that the parent is aware of, but disregards.'" *In re L.E.S.*, 471 S.W.3d at 925 (quoting *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.)). Generally, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

In addition, a pattern of drug abuse will support a finding of conduct endangering a child even if there is no evidence that such drug use caused a physical or actual injury to the child. *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A history of illegal drug use is conduct that subjects a child to a life that is uncertain and unstable, endangering the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). A parent's drug use, criminal history, and employment and housing instability prior to and during the case create a course of conduct from which the factfinder could determine the parent endangered the child's emotional and physical well-being. *See In re M.C.,* No. 09-18-00436-CV, 2019 WL 1561824, at *6 (Tex. App.—Beaumont Apr. 11, 2019, no pet.) (mem. op.); *see also In re S.R.*, 452 S.W.3d at 361-62 (parent's drug use may qualify as a voluntary, deliberate, and conscious

16

course of conduct endangering the child's well-being); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use may support termination under subsection E because "it exposes the child to the possibility that the parent may be impaired or imprisoned[ ]"). A parent's continued drug use when the custody of her child is in jeopardy supports a finding of endangerment. *See In re S.R.*, 452 S.W.3d at 361-62 (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). Further, a factfinder can reasonably infer that a parent's failure to submit to court-ordered drug tests indicates the parent was avoiding testing because she was using illegal drugs. *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "Domestic violence and a propensity for violence may be considered evidence of endangerment, even if the endangering acts did not occur in the child's presence, were not directed at the child, or did not cause actual injury to the child." *In re K.A.R.*, No. 04-17-00723-CV, 2018 WL 1733147, at *3 (Tex. App.—San Antonio Apr. 11, 2018, pet. denied) (mem. op.); *see Boyd*, 727 S.W.2d at 533. Abusive or violent conduct by a parent can produce an environment endangering the child's physical or emotional well-being. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

## 1. Mother

The jury heard evidence that Mother admitted to past and present drug usage, including marijuana use as recent as the spring of 2022. Repeated requests were made for Mother to submit to drug testing and Mother has not been able to provide two clean drug tests so she could resume visitation with her daughter. The trial court heard Mother's testimony that she used marijuana while in a relationship with Father and during her pregnancy with Anne. Evidence also demonstrated that she continued to use a "THC" substance while pregnant with her second child. Mother also admitted that she was arrested several times for possession of a controlled substance, with the most recent arrest a few months before trial. Finally, Mother admitted to drug use after her child was removed and admitted that she had failed to complete recommended substance abuse counseling. Additionally, while in Mother's care, Anne suffered an injury that Mother could not explain.

The trial court heard from the first caseworker that Mother failed to contact the Department for several months after her child was removed from maternal great-grandmother's care. Mother admitted that she is not working, and while she may have had stable housing, she was relying on others for money. The factfinder heard evidence that Father was physically abusive to Mother throughout their relationship. Mother continued her relationship with Father and she is currently pregnant with another child conceived with Father. Mother admitted she did not call the police, or

otherwise report Father's abuse, and she also did not leave Father until he was incarcerated.

**2. Father**

The factfinder heard evidence regarding Father's drug use, including smoking marijuana with Mother during her pregnancy with Anne. Father testified that he planned to live with his mother and stepfather. CASA expressed reservations and concerns about the stepfather. Father admitted his stepfather was verbally abusive to him as a child. The trial court also heard evidence that Father had a propensity for violent conduct and had been arrested several times for assaults against Mother. The evidence also established that Anne suffered an injury while in Mother and Father's care--an injury that was discovered only after maternal aunt took Anne to the doctor.

Deferring to the factfinder's credibility determinations and reviewing all the evidence in the light most favorable to the termination findings under subsections D and E, the trial court could reasonably have formed a firm belief or conviction that Mother and Father, through their individual acts or omissions or a course of conduct, endangered their child's physical or emotional well-being. We conclude that the Department established, by clear and convincing evidence, that Mother and Father committed the predicate acts enumerated in subsections D and E. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). Further, considering the entire record, we conclude the disputed evidence the trial court could not reasonably have credited in

favor of its endangerment findings is not so significant that the court could not reasonably have formed a firm belief or conviction that Mother and Father endangered their child. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we need not address the sufficiency of the evidence to support a violation of subsections O regarding Father. *See In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.). We overrule Mother's and Father's first and second issues.

## B. Best Interest of the Child

While Mother did not challenge the best interest finding, Father challenges the sufficiency of the evidence supporting the trial court's finding that terminating his parental rights is in Anne's best interest.

In a suit filed by the Department to terminate the parent-child relationship, the Department must prove by "clear and convincing evidence" that terminating the parent-child relationship is in the child's best interest. Tex. Fam. Code Ann. § 101.007. As defined by the Family Code, clear and convincing evidence "means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id*.

Trial courts have wide latitude in determining a child's best interest. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong presumption that the best interest of a child is served by keeping the child with his parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528,

533 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 153.131(b). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Family Code outlines nonexclusive factors to be considered in determining whether a parent is willing and able to provide a safe environment for a child including: the child's age and physical and mental vulnerabilities; whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities; and whether an adequate social support system consisting of an extended family and friends is available to the child. *Id*. § 263.307(b); *see also In re R.R.*, 209 S.W.3d at 116. The Texas Supreme Court has articulated several additional factors that may be considered when determining whether termination of parental rights is in the best interest of the child, including: 1) the desires of the child, 2) the emotional and physical needs of the child now and

21

in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist these individuals to promote the best interest of the child, 6) the plans for the child by these individuals or by the agency seeking custody, 7) the stability of the home or proposed placement, 8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (setting forth the "*Holley* factors" and noting "[t]his listing is by no means exhaustive[ ]"). No specific *Holley* factor is controlling, and evidence of one factor may be enough to support a finding that termination is in the child's best interest. *See M.C. v. Tex. Dep't of Family & Protective Servs*., 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied) ("Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child.") (citing *In re C.H*., 89 S.W.3d at 27); *In re A.P*., 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). Because stability and permanence are important in a child's emotional and physical development, termination of parental interests may be in the child's best interest when a parent is unable to provide a stable environment or a reliable source for food, clothing, shelter, and emotional support. *See In re J.D.,* 436 S.W.3d 105, 119-20 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In*

*re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied)); *In re T.G.R.-M.,* 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

A parent's past conduct is relevant to determining the parent's present and future ability to care for a child. *See In re C.H.*, 89 S.W.3d at 28 (parent's past performance as parent is relevant to determination of present and future ability to provide for child); *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) (factfinder may measure a parent's future conduct by past conduct); *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 824 (Tex. App.—Fort Worth 2007, no pet.). The best-interest determination may rely on direct or circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). If, in light of the entire record, no reasonable factfinder could form a firm belief or conviction that termination was in the child's best interest, then we must conclude that the evidence is legally insufficient to support termination. *See In re J.F.C.*, 96 S.W.3d at 266.

Father had been arrested and incarcerated several times for domestic abuse against Mother, including seven months before trial. He admitted to smoking marijuana with Mother during her pregnancy with Anne. Father testified that he was arrested and convicted for the assault strangulation of Mother and received eight years deferred adjudication. Father confirmed that he has a new family violence assault charge against Mother pending since April 2022. A history of criminal

23

activity is a factor the trial court can consider in determining the parental abilities of a parent who may be sent to jail or prison and unavailable to care for the child.

**The Holley Factors**

### 1) The Child's Desires

Because of the lack of evidence as to Anne's desires in this record, the first Holley Factor is given neutral weight.

### 2) Emotional and Physical Needs of the Child Now and in the Future

Father has a serious criminal history involving family violence. This court recently considered similar criminal history in *In re J.O.*, No. 09-21-00341-CV, 2022 Tex. App. LEXIS 1769, at *31 (Tex. App.— Beaumont Mar. 17, 2022, pet. denied) (mem. op.). Citing *In re R.W.,* 129 S.W.3d 732, we agreed with the Fort Worth Court of Appeals that "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." Id at 739. Since Father's deferred adjudicated probation could be revoked any time during the next eight years, it constitutes evidence upon which the court can base its decision that Father cannot provide a stable home environment for Anne. It is evidence the trial court can consider to determine that Father is unable to meet the emotional and physical needs of the child now and in the future. Father's past performance engaging in conduct endangering Anne, as we have previously found, are relevant to the determination of present and future ability to provide for the child.

24

*See In re B.P.*, No. 09-21-00038-CV, 2021 Tex. App. LEXIS 5000 at \*10 (Tex. App.—Beaumont June 24, 2021, no pet.) (explaining the factfinder may infer from a parent's past conduct endangering the child that similar conduct will recur if the child were to be returned to the parent). Under the second *Holley* factor, this evidence supports the findings of the Court.

### 3) Emotional and Physical Danger to the Child Now and in the Future

Father has been arrested and incarcerated several times for domestic abuse against Mother, including seven months before trial. He admitted to smoking marijuana with Mother during her pregnancy with Anne. This evidence can be relied upon by the trial court to find that Father's past behaviors predict that Father may place Anne in physical or emotional danger in the future. *See id.* at \*5.

### 4) The Parental Abilities of the Individuals Seeking Custody

Anne lived with Father for a short period of time before she was placed in foster care. Although ordered to Batterers Intervention Prevention Program and a psychiatric evaluation, Father failed to complete these requirements. Father's significant criminal history and failure to complete services are evidence upon which the trial court could have formed a firm belief or conviction that termination of Father's parental rights is in Anne' best interest.

## 5) The Programs Available to Assist the Father

Programs were made available to the Father for batterer's intervention and substance abuse in which Father failed or refused to participate. This fact weighs in favor of termination of Father's rights.

## 6) The Father's Plans for the Child

Father is taking medication to control his anger issues since he has been released from jail. Mother denied having an ongoing relationship with Father but agreed that she is currently pregnant with Father's child. This indicates there is likely to be future interactions between the two which could lead to violence as it has in the past. Father stated he does not have any items for Anne in his current home. He plans to get a car seat, bed, toys, clothes, and diapers for her to go in her room if given custody—he does not have those things now. The trial court could have considered these circumstances that Father has not made adequate plans to ensure the physical and emotional well-being of Anne. This evidence weighs against Father on the best interest of the child.

## 7) The Stability of the Home or Proposed Placement

The contingent nature of the planned living situation expressed by Father, together with the possibility that his probation could be revoked and he could be sent to prison, weigh against the stability of his proposed placement. The trial court could

have formed a firm belief or conviction that, based upon these circumstances, termination of Father's parental rights is in Anne's best interest.

### 8) The Acts or Omissions of the Parent

The fact that Father smoked marijuana "outside" while Anne was living in his household and assaulted Anne's Mother, resulting in being placed on criminal probation, weigh against the Father in this case. The trial court could have formed a firm belief or conviction that Father's illegal actions around the child are not in the best interest of the child.

### 9) Any Excuse for the Acts or Omissions of the Parent

Father has not provided any legitimate excuses for dangerous acts and omissions admitted in this case. Based upon all the circumstances presented by the evidence, the trial court could properly form a firm belief or conviction that placing Anne with Father would not be in Anne's best interest.

Finally, testimony demonstrated that Anne is happy in her foster home, she is considered to be a part of the foster parent's family, and her foster parents are meeting all her needs. The foster family wants to adopt Anne if Mother's and Father's parental rights are terminated. Father's serious criminal history, failure to complete batterer's intervention programs, substance abuse programs, and psychiatric evaluations, are sufficient for the trial court to have formed a firm belief or conviction that termination of Father's parental rights are in Anne's best interest.

27

Having considered the evidence related to best interest and deferring to the trial court's determinations on witness credibility, the resolution of conflicts in the evidence, and the weight to be given the testimony, we conclude that the statutory and *Holley* factors weigh in favor of the trial court's finding that termination is in the child's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *In re J.F.C.,* 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. We conclude that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Father's parental rights is in the child's best interest, and we overrule his last issue.

## IV. Conclusion

Having overruled Mother's and Father's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
JAY WRIGHT
Justice

Submitted on April 19, 2023
Opinion Delivered June 15, 2023

Before Horton, Johnson and Wright, JJ.

28